# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**TERRAFORM LABS PTE. LTD.**,

       Movant,

       - vs. -

**CITADEL SECURITIES, LLC**,

       Respondent.

Misc. Case No.: _____

[Re: Civil Action No. 23-cv-1346, Action pending in the United States District Court for the Southern District of New York, Hon. Jed S. Rakoff]

## MOVANT TERRAFORM LABS PTE. LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH ITS NON-PARTY SUBPOENA DUCES TECUM OR, ALTERNATIVELY, TO TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK

HEISE SUAREZ MELVILLE P.A.
2990 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Luis E. Suarez
Florida Bar No. 390021
lsuarez@hsmpa.com

ELLIOTT KWOK LEVINE & JAROSLAW LLP
565 Fifth Avenue, 7th Floor
New York, New York 10017
Tel: (212) 321-0510
Matthew L. Levine
(*pro hac vice* in process)
mlevine@ekljlaw.com
Rachel J. Rodriguez
rrodriguez@ekljlaw.com
(*pro hac vice* in process)

## <u>TABLE OF CONTENTS</u>

<u>PRELIMINARY STATEMENT</u> ................................................................................................ 1

<u>STATEMENT OF FACTS</u> ..................................................................................................... 3

    **A.**    Background on Movants and the UST/LUNA Cryptocurrency Pair ..................... 3

    **B.**    The SEC's Fraud Action Concerning the Purported Instability of the LUNA/UST Mint-Burn Algorithm and the May 2022 Depeg .................................................... 4

    **C.**    Movant's Defense in the SEC Action and Relevant Discovery Efforts ................ 5

        1.    <u>Movant's Defense in the SEC Action</u> ........................................................ 5

        2.    <u>The Limited, Relevant Discovery Sought by Movant</u> ............................... 7

        3.    <u>The Unsuccessful Meet and Confer Process</u> ............................................ 10

<u>ARGUMENT</u> ......................................................................................................................... 13

**I.**    The Court Should Compel Citadel Securities to Produce the Limited and Relevant Documentation Sought by Movant ....................................................................................... 13

    **A.**    Applicable Law ................................................................................................... 13

    **B.**    The Limited Trading Data Sought from Citadel Securities Is Directly Relevant to the Underlying Action and Presents Little or No Burden to Citadel Securities ... 15

**II.**    In the Alternative, the Court Should Transfer this Motion to the Southern District of New York for Decision ............................................................................................................... 16

<u>CONCLUSION</u> ...................................................................................................................... 18

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Benavides v. Velocity IQ, Inc.*,
    2006 WL 680656 (M.D. Fla. Mar. 15, 2006) ........................................................ 14

*Centurion Indus., Inc. v. Warren Steurer and Assocs.*,
    665 F.2d 323 (10th Cir. 1981) ............................................................................. 14

*Chembia Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*,
    236 F.R.D. 129 (E.D.N.Y. 2006) ......................................................................... 14

*Coty Inc. v. C Lenu Inc.*,
    2010 WL 5392887 (S.D. Fl., Dec. 22, 2010) ...................................................... 15

*Federal Open Mkt. Comm. v. Merrill*,
    443 U.S. 340 (1979) ............................................................................................. 14

*Honeywell Int'l Inc. v. Narco Asbestos Pers. Inj. Settlement Tr.*,
    2021 WL 6118078 (M.D. Fla. Dec. 27, 2021) .................................................... 17

*Landstar Glob. Logistics, Inc. v. Haskins*,
    2011 WL 13176155 (M.D. Fla. Jan. 25, 2011) ............................................... 2, 14

*Oppenheimer Fund, Inc., v. Sanders*,
    437 U.S. 340 (1978) ............................................................................................. 14

*State Farm Mutual Auto. Ins. Co. v. Maistrenko*,
    2020 WL 486271 (S.D. Fla., Jan. 30, 2020) .................................................. 2, 14

*The Dispatch Printing Co. v. Zuckerman*,
    2016 WL 335753 (S.D. Fla. Jan. 27, 2016) ........................................................ 17

*United States ex rel. Willis v. SouthernCare, Inc.*,
    2015 WL 5604367 (S.D. Ga., Sept. 23, 2015) .................................................... 15

*Woods v. On Baldwin Pond, LLC*,
    2014 WL 12625078 (M.D. Fla. Apr. 2, 2014) .................................................... 14

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 13
Fed. R. Civ. P. 45(a)(1)(iii) .......................................................................................... 13

ii

Fed. R. Civ. P. 45(f) ................................................................................................. 3, 16

Federal Rule of Civil Procedure 26 ........................................................................... 13

Federal Rule of Civil Procedure 45 ............................................................. 13, 14, 16

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 26 and 45, Movant Terraform Labs Pte. Ltd. ("Movant") respectfully submits its motion to compel Citadel Securities, LLC ("Citadel Securities") to produce certain data responsive to a third-party subpoena that is vital to Movant's defense in a complex cryptocurrency action brought by the U.S. Securities and Exchange Commission (the "SEC") in the U.S. District Court for the Southern District of New York, *SEC v. Terraform Labs, PTE LTD, and Do Hyeong Kwon*, Case No. 1:23-cv-01346 (the "Underlying Action").

Movant, a software development firm, helped develop a digital asset blockchain called "Terra." One of the digital assets supported by the Terra blockchain was an algorithmic stablecoin known as "TerraUSD," or simply "UST." A stablecoin is a type of cryptocurrency token whose value is tied -- or "pegged" -- to a fiat currency, such as the U.S. dollar. By design, UST performed as a stablecoin through its algorithmic "mint/burn" mechanism.

The SEC alleges in the Underlying Action that Movant made false representations publicly about the stability of UST. Specifically, the SEC asserts that Movant misrepresented how well the "mint/burn" design would allow UST to withstand market forces. The SEC further alleges that, due to Movant's purported misrepresentations, a market event occurred that caused the destabilization of UST stablecoin, such that the stablecoin become "depegged" from the U.S. dollar during the approximate period May 6 to May 12, 2022 (the "May 2022 Depeg").

Movant strongly disputes the SEC's allegations. Movant contends that the market destabilization that occurred did not result from instability in the algorithm underlying the UST stablecoin. Instead, Movant contends that the market was destabilized due to the concerted, intentional effort of certain third party market participants to "short" and cause UST to depeg from its one dollar price. *See, e.g.*, Movant's Answer in the Underlying Action, ¶ 170.

To establish this critical defense, Movant served Rule 45 subpoenas on Citadel Securities and a related entity, Citadel Enterprise Americas, LLC ("Citadel Enterprise," and together with Citadel Securities, the "Citadel Entities"), seeking certain trading data related to the May 2022 Depeg.  In an effort to minimize the burden on the Citadel Entities, Movant substantially narrowed the scope of the subpoenas to focus on the most critical trading data related to the May 2022 Depeg.  In response, the Citadel Entities produced a total of just one document (produced under the Confidentiality Order in effect in the Underlying Action) from Citadel Securities, and categorically refused to turn over anything else.

The information that Movant seeks here from Citadel Securities is limited:  documents describing any trading strategy in any of the Terra-Native Tokens or the Terra Financial Instruments during the time period March 1, 2022 through May 31, 2022.  This information is essential to Movant's defense because Movant must determine why the May 2022 Depeg occurred, whether Citadel Securities participated in the May 2022 Depeg, and whether Citadel Securities coordinated with others in these efforts to short UST.

As set forth more fully below, Movant has pointed to publicly available evidence suggesting that the head of the Citadel Entities, Ken Griffin, intended to short UST at or about the time of the May 2022 Depeg.  Moreover, as also set forth below, Movant has now obtained evidence suggesting one Citadel Securities may actually have had a connection to the May 2022 Depeg – despite the fact that Citadel Securities publicly denied ever having traded in UST during that depeg event.

The standard for Rule 45 discovery is generous here.  *E.g., State Farm Mutual Auto. Ins. Co. v. Maistrenko,* No. 19-CV-20850-mc-Scola, 2020 WL 486271, at *3 (S.D. Fla., Jan. 30, 2020); *Landstar Glob. Logistics, Inc. v. Haskins*, No. 3:09-CV-1163-J-32JRK, 2011 WL 13176155, at *1

(M.D. Fla. Jan. 25, 2011).  Under this liberal standard, Citadel Securities should be required to produce the limited trading strategy information sought by Movant.  Moreover, because Movant's current request is narrow, there can be no argument that it is burdensome.  And any concerns about confidentiality may be obviated by the Protective Order in the Underlying Action – in fact, as noted, Citadel Securities already have produced their lone document under the protections of that Order.

In short, the trading strategy information sought from Citadel Securities is highly relevant to Movant's defense in the Underlying Action, and this defense will be substantially impaired if Citadel Securities is successful in withholding this limited information.  For these reasons, the Court should grant the instant motion to compel.

Alternatively, should the Court deem it warranted, the Court should transfer this matter for decision to the Hon. Jed S. Rakoff, the presiding judge in the Underlying Action.   Fed. R. Civ. P. 45(f).

## STATEMENT OF FACTS

### A.      Background on Movants and the UST/LUNA Cryptocurrency Pair

Movant is an open-source software development firm based in Singapore, and co-defendant Mr. Kwon formerly served as its CEO.  Am. Cpl. ¶¶ 15–16 (Rodriguez Dec., Ex. A.)[1]. Movant developed what is known as the "Terra" blockchain, which is built to support a range of digital assets and protocols, including algorithmic stablecoins.  Algorithmic stablecoins are a type of cryptocurrency token whose value is tied or "pegged" to fiat currency, such as the U.S. dollar. Am. Cpl. ¶¶ 31–33.  Digital assets on the Terra blockchain include (a) TerraUSD ("UST"), which

---

[1] "Rodriguez Dec." refers to the Declaration of Rachel J. Rodriguez, submitted herewith.  "Am. Cpl." refers to the Amended Complaint filed by the SEC in the Underlying Action on April 3, 2023.  "Ans." refers to the Answer filed by Movant in the Underlying Action on August 14, 2023.

was a decentralized algorithmic stablecoin value-pegged to the U.S. dollar, and (b) LUNA, which was a non-stablecoin cryptocurrency intended to absorb volatility and stabilize the UST price peg for TerraUSD. *Id.*

These two cryptocurrency tokens operated in tandem to stabilize the UST peg through what is known as a "mint/burn" mechanism. Under this procedure, "minting" or creating 1 UST would "burn" or destroy $1 worth of LUNA; and minting $1 USD worth of LUNA would burn 1 UST. *Id.* The opportunity to arbitrage between the price of UST and $1 incentivized users to interact with the protocol to decrease and increase the supplies of UST and LUNA, and thus normalize the price of UST relative to $1. *Id.*

**B.   The SEC's Fraud Action Concerning the Purported Instability of the LUNA/UST Mint-Burn Algorithm and the May 2022 Depeg**

The SEC filed its initial Complaint in the Underlying Action in February 2023, and an Amended Complaint in March 2023, alleging several violations of the securities laws. (*See id.*) In brief, the SEC first alleges Movants offered and sold cryptocurrency tokens, that purportedly constituted unregistered securities and security-based swaps, including UST and LUNA. Am. Cpl. ¶¶ 39–117.

The SEC also brings two different fraud claims, one of which is relevant here. The SEC alleges that Movant misled investors about the stability of UST as a stablecoin. The SEC asserts, specifically, that Movant falsely claimed that the algorithm developed by Movant was able to automatically restore and maintain the $1 price peg if it happened to move away from the peg, and thereby maintain the reliability of UST as a stablecoin. *Id.* ¶¶ 1, 6–9, 153–73.[2]

---

[2] In the other fraud claim the SEC alleges Movant falsely represented that a Korean payment system used the Terra blockchain to process and settle commercial payments, doing so to encourage purchases of the two tokens used on the Terra blockchain, LUNA and UST. *Id.* ¶¶ 121–52.

In May 2021, the market price of UST declined from its peg of one U.S. Dollar (the "May 2021 Depeg"), but then was restored to the peg shortly after.   Am. Cpl. ¶¶ 153 - 161.   In support of its fraud allegation, the SEC asserts that, after the May 2021 Depeg, Movant repeatedly misrepresented the cause of UST's recovery to the $1 peg, by falsely claiming that the algorithm was able to restore and maintain the price peg.  The SEC's claims this was false because, it argues, the peg actually recovered <u>only because</u> Movant entered into an arrangement with a U.S. trading firm, Jump Trading LLC,[3] to purchase substantial amounts of UST to support the price of UST. The SEC further alleges that it was this intervention by Jump Trading – and not the success of the algorithmic design of the stablecoin – that led to the restoration of the peg in May 2021.  *Id.* ¶¶ 154-169.

The SEC's complaint further alleges, as part of its fraud theory, that the market price of UST again declined from its peg of one U.S. Dollar in May 2022 (the "May 2022 Depeg"), but was unable to be restored because – this time -- there was no intervention similar to Jump Trading's alleged intervention during the May 2021 Depeg.  *See* Am. Cpl. ¶¶ 170 - 173.  According to the SEC, Movant's purported misrepresentations as to these destabilization events caused the loss of $40 billion of market value in UST and LUNA, including devastating losses for U.S. retail and institutional investors.  *Id.*

### C.    Movant's Defense in the SEC Action and Relevant Discovery Efforts

#### 1.    Movant's Defense in the SEC Action

In response, Movant denies the SEC's allegations that the Terra blockchain algorithm was ineffective and caused the instability that led to the May 2022 Depeg.  Instead, Movant asserts that the May 2022 Depeg actually resulted from other causes.   Specifically, Movant contends that the

---

[3] Jump Trading LLC is referred to at paragraphs 153 through 169 of the Amended Complaint as the "U.S. Trading Firm."

May 2022 Depeg resulted from an intentional and ultimately successful effort by third parties to "short" and depeg UST from its price. Ans. ¶ 170 (Rodriguez Dec., Ex. B) (stating that "the cause of the depeg appears to have been concerted action by certain market participants to depress the price of UST").

Regarding the May 2022 Depeg, publicly available data reflects that starting around 10:30 CDT on May 9, 2022, selling pressure in trading venues increased substantially and continued at an increased pace through May 10, 2022. This selling pressure resulted in UST losing its peg on May 9, 2022, after which Movant engaged in a major effort to support the price. That effort was overcome by a tidal wave of trading on May 10, 2022. *See, e.g.,* Rodriguez Dec., Ex. C) (May 13,2022, Galaxy Digital Research, *Examining UST's Collapse).*

Prior to the May 2022 Depeg, a significant portion of UST was deposited in a lending protocol on the Terra blockchain, known as the "Anchor Protocol." Crypto assets deposited in the Anchor Protocol could obtain a return of almost 20 percent. The May 2022 Depeg was precipitated by the withdrawal by one or more market participants of close to $100 million worth of UST from the Anchor Protocol, and then the deposit of most of this UST in a liquidity pool for stablecoins that sits on another blockchain, the Ether blockchain. This liquidity pool is known as the "UST/3CRV curve pool." The deposit of this large amount of UST into the UST/3CRV curve pool was then sold for other stablecoins, consequently forcing the price of UST below its $1 peg.[4]

In addition to this directed downward force on the price of UST, the market was further destabilized by the near-simultaneous larger withdrawals of UST from the Anchor Protocol. These other large withdrawals also were sent to the 3CRV curve pool and other centralized exchanges

---

[4] *See, e.g.,* Nansen, "On-Chain Forensics: Demystifying TerraUSA De-peg" (May 27, 2022), available at https://www.nansen.ai/research/on-chain-forensics-demystifying-terrausd-de-peg.

and then quickly sold, causing further downward pressure on the price of UST.[5]

The timing and volume of such large movements of digital assets strongly suggests that the May 2022 Depeg did not result from normal market activity, but instead revealed a coordinated effort to short UST by certain market participants. Indeed, according to Nansen, a blockchain research firm, "a small number of players identified and arbitrated vulnerabilities – specifically in relation to the shallow liquidity of the Curve pools securing the UST's peg to the other stablecoins."[6]

2.      The Limited, Relevant Discovery Sought by Movant

As noted above, Movant's defense substantially relies on establishing that "the cause of the [May 2022 Depeg] appears to have been concerted action by certain market participants to depress the price of UST." Ans. ¶ 170. As noted above, publicly available information compiled by cryptocurrency analytics firm Nansen indicates that the May 2022 Depeg was caused by the act of just seven so-called "whale" traders – well-funded, established traders which have the ability and determination to take very large long or short positions in an asset or financial instrument. According to Nansen, its "on-chain investigation revealed that a small number of players identified vulnerabilities early into the UST de-peg."[7]

To collect evidence constituting the trading data that would reveal this concerted action to depress the price of UST, Movant has issued a targeted set of subpoenas to certain market participants. Two of the market participants subpoenaed are the Citadel Entities. Both of the Citadel Entities are controlled by Ken Griffin, who is renowned for his short selling tactics across

---

[5] *See, e.g., id.*

[6] *Id.*

[7] *Id.*

different financial markets.[8]

The basis for issuing the subpoenas to the Citadel Entities in this instance arose, *inter alia,* from market information disclosed in the weeks around the May 2022 Depeg -- more specifically between March 1 and May 31, 2022.  According to open-source information, traders active in cryptocurrency markets received information, or accessed rumors, that Ken Griffin and/or Citadel were seeking to short UST.  For example (and without limitation):

- In a screenshot of a chat from a Discord channel[9] provided during the May 2022 Depeg by Remi Tetot, Head of Research of Global Macro Investor,[10] to Movant, a cryptocurrency trader who goes by the pseudonym "@GiganticRebirth" and has had 85,000 followers,[11] stated "I have lunch with ken griffin about twice a month . . . he was telling me over a nice bacon rib they were going to soros the f*** out of luna ust."

- "@JacobCanfield," a trader in financial markets with nearly 90,000 followers on Twitter (now "X"), tweeted on May 9, 2022 that the "[r]umor is citadel is the culprit" in massive trade where "Citadel borrows 100k BTC [100,000 Bitcoin], uses it to open a short on UST . . started dumping UST to make it lose its peg . . . ."[12]

None of this is surprising.  The Citadel enterprise – with some <u>$61 billion in investment capital at its fingertips</u>[13] -- is precisely the type of entity that has the funding, resources, and skill to make outsized bets, and even attempt to move markets improperly.  *See, e.g.,* "South Korea

---

[8] *See, e.g.,*"Ken Griffin, Citadel, and the $35 Billion Year," https://hedgevision.substack.com/p/ken-griffin-citadel-and-the-35-billion (noting that Citadel dropped 20% in less than 2 weeks after the SEC temporarily banned short-selling on 900 stocks, leading to the "single worst month, by far, in the firm's history");   "Ken Griffin Is Buying One of the Most Shorted Stocks In the Market," https://www.fool.com/investing/2023/02/19/ken-griffin-buying-most-shorted-stocks-market (noting that Citadel Securities disclosed a 5.5% stake in "the crypto bank Silvergate Captial, which is one of the most shorted stocks in the U.S.," and did not necessarily appear to be taking a true long position); "Boy Wonder," https://www.institutionalinvestor.com/article/2btfmc4i914x7pya9zwg0/home/boy-wonder   (noting that Griffin, then a college sophomore, made money during the stock crash of 1987 because he was "leaning very short in his portfolio").

[9] See Rodriguez Dec., Ex. D.  Discord is a publicly-available website that anyone may join, and is organized into topic-based "channels," where people who are invited to join a particular channel may "collaborate, share, and just talk about your day without clogging up a group chat."  *See* https://discord.com/.

[10] *See* https://globalmacroinvestor.com/welcome/.

[11] Background on @GiganticRebirth may be found, *inter alia,* from articles that include CoinDesk.  *See* https://www.coindesk.com/markets/2022/02/17/how-the-big-short-dao-bet-against-the-crypto-market-and-won/.

[12] *See* https://twitter.com/JacobCanfield/status/1523857775452987392?lang=en (available as of Oct. 1, 2023).

[13] *See* https://www.citadel.com/.

Fines Citadel for Stock Algorithm Trading Breaches," *Reuters* (Jan. 26, 2023) ("South Korea's financial regulator has imposed a fine of 11.88 billion won ($9.66 million) on U.S.-based Citadel Securities, saying it disturbed the local stock market with high-frequency algorithm trading. The Financial Services Commission (FSC) said in a statement released on Thursday the firm had distorted stock prices with artificial factors, such as orders on the condition of "immediate or cancel" and by filling gaps in bid prices."); *"Biotech Company Says Citadel, Other Big Traders, Manipulated Its Stock Price," Wall Street Journal* (Dec. 1, 2022).[14]

Indeed, the clamoring chorus of information pointing to Citadel as one of the market actors behind the May 2022 Depeg, became so loud and widespread that it caused Citadel to issue several public statements to mainstream media outlets denying that it had caused the depeg. Citadel went as far as to flatly deny that it ever engaged in any trading in any stablecoin. Citadel Securities told *Forbes* magazine, for example: "'[*Citadel Securities*] *does not trade stablecoins, including UST*.'"[15] Citadel directed the same denial to *Blockworks*: "'[*Citadel Securities*] *does not trade stablecoins, including UST*,' a spokesperson also told [Blockworks]."[16] (Emphasis supplied.)

These public denials were false. As discussed more fully below, the Citadel Entities produced just a single document in response to the subpoenas (the "Citadel Subpoenas"). This document, however, ███████████████████████████████████████████████████

███████████████████████████████████████████████████

█  ████████████████████████████████████████████████

---

[14]   *See* https://www.wsj.com/articles/biotech-company-says-citadel-other-big-traders-manipulated-its-stock-price-11669901683; https://www.reuters.com/business/finance/skorea-fines-citadel-securities-stock-algorithm-trading-breaches-2023-01-27/.

[15]   https://www.forbes.com/sites/michaeldelcastillo/2022/05/11/blackrock-and-citadel-deny-trading-cratering-stablecoin/?sh=57f5beab38f9 (available Oct. 1, 2023).

[16]   *See* https://twitter.com/dankeeler/status/1524466267054395394?lang=en (available as of Oct. 1, 2023).



Contrary to its public denials, Citadel Securities did conduct some trading in ▮▮▮▮▮

▮▮▮▮▮▮  Why is unclear.  Accordingly, Movant seeks a very modest amount of additional

documentation from Citadel Securities concerning ▮▮▮▮▮▮▮ – specifically, the underlying

trading strategies -- to determine whether Citadel Securities and/or others engaged in the

"concerted action by certain market participants to depress the price of UST." Ans. ¶ 170.  Citadel

Securities, however, has forcefully resisted producing even this limited documentation.

        3.     <u>The Unsuccessful Meet and Confer Process</u>

The Hon. Jed S. Rakoff, who presides over the Underlying Action, issued a Civil Case

Management Plan on June 28, 2023 that provides for accelerated discovery.  Although the SEC

filed this complex and novel enforcement action in February 2023, and although Movant's Motion

to Dismiss the Amended Complaint was denied just two months ago, discovery is scheduled to

close on October 13, 2023.  The parties are expected to be prepared for trial on November 30,

2023.  (Rodriguez Dec., Ex. E.)

On August 1, 2023, Movant sought to serve each of the Citadel Subpoenas (Rodriguez

Dec. ¶ 8, Exs. F & G) by e-mail with a return date of August 14, 2023.  The SEC's Amended

Complaint and Protective Order from the Underlying Action were included.  On August 2, in-

house counsel for both Citadel Entities accepted service of the Citadel Subpoenas, reserving all

other objections and responses.  (Rodriguez Dec. ¶ 11.)

On August 10, outside counsel for both Citadel Entities contacted Movant's counsel to

"learn more about the underlying litigation and the materials [Movant] is seeking." (Rodriguez Dec., Ex. H.)   Following a call on August 15 to discuss the Citadel Subpoenas with counsel for the Citadel Entities, Movant agreed to an extension of time, until August 25, 2023, for the Citadel Entities to respond to the two subpoenas. (*See id.*)

On August 25, the Citadel Entities timely served their objections and responses. Both entities objected on numerous grounds and refused to produce a single document. (Rodriguez Dec., Exs. I & J.)   On September 11, at Movant's request, counsel for Movant and the Citadel Entities conducted a meet and confer by video call to discuss the Citadel Entities' objections. During this call Movant proposed to substantially narrow its requests to the following:

> Regarding the August 1, 2023 Subpoena to Citadel Securities LLC (and without any waiver as indicated above) we propose that Citadel Securities produce the following documents:
>
> 1. All documents reflecting any interaction of any type with any of the Target Wallets (as defined in the Subpoena) during the time period April 1, 2018 through the Present.
>
> 2. All transaction records for any trading in any of the Terra-Native Tokens during the period May 1 through May 20, 2022.
>
> 3. All transaction records for any trading in any of the Terra Financial Instruments during the time period March 1, 2022 through May 31, 2022.
>
> 4. All documents describing any trading strategy in any of the Terra-Native Tokens or the Terra Financial Instruments during the time period March 1, 2022 through May 31, 2022.
>
> Regarding the August 1, 2023 Subpoena to Citadel Enterprise Americas LLC (and without any waiver as indicated above) we propose that Citadel Enterprise produce the following documents:
>
> 1. All documents reflecting any interaction of any type with any of the Target Wallets (as defined in the Subpoena) during the time period April 1, 2018 through the Present.
>
> 2. All documents describing any trading strategy in any of the Terra-Native Tokens or the Terra Financial Instruments during the time period March 1, 2022 through

11

May 31, 2022 (together, the "Narrowed Requests").

In connection with this first meet and confer, Movant's counsel reminded the Citadel Entities' counsel that "our effort to resolve our differences is very time sensitive, in light of the Civil Case Management Plan ordered by Judge Rakoff." (Rodriguez Dec., Ex. H.)[17]

On September 14, Movant's counsel followed up with the Citadel Entities' counsel to see if they had a response to Movant's Narrowed Requests. On September 19, the Citadel Entities' counsel responded to indicate they would be available later that week, or the following week, for a second meet and confer. The Citadel Entities' counsel chose September 26 for the second meet and confer concerning the Narrowed Requests.

Following the second meet and confer on September 26 (also held by video call), counsel for the Citadel Entities responded on September 28 to the Narrowed Requests, as follows:

> **All documents reflecting any interaction of any type with any of the Target Wallets (as defined in the Subpoena) during the time period April 1, 2018 through the Present.** Neither entity has had any interaction of any type with any of the Target Wallets during the time period April 1, 2018 through the present.
>
> **All documents describing any trading strategy in any of the Terra-Native Tokens or the Terra Financial Instruments during the time period March 1, 2022 through May 31, 2022.** Neither entity will search for, review, or produce documents in response to this Request.
>
> As we stated on the Sept. 26 call, Terraform's request is overbroad and unduly burdensome, particularly in view of the low relevance that any such documents would have.
>
> Citadel has no trading in the Terra Financial Instruments or the Terra-Native Tokens and therefore has no responsive documents. And Citadel Securities has only had *de minimis* trading. Terraform has not articulated how any trading strategy, to the extent one exists, would be relevant to the activities leading to the May 2022 Depeg. In addition, the low relevance of these documents, to the extent any such

---

[17] Movant's proposal further noted that, "[o]ur proposals would be without any waiver of or prejudice to our rights to seek enforcement of either or both of the subpoenas at a later date, should we deem it necessary. Nor would a production by your clients in response to our proposals waive any objection, response or remedy on the part of Citadel Securities or Citadel Enterprise in connection with an effort by our client to enforce either or both of the subpoenas." *Id.*

documents exist, must be balanced against the business-sensitive information being sought.

**All transaction records for any trading in any of the Terra-Native Tokens during the period May 1 through May 20, 2022./All transaction records for any trading in any of the Terra Financial Instruments during the time period March 1, 2022 through May 31, 2022.** As above, Citadel had no such trading. There are no records to produce.

With respect to Citadel Securities, we have produced the record as confidential under the Protective Order. The entirety of the record is confidential and, if used, we would expect that it be redacted entirely.

(Rodriguez Dec., Ex. K.)

Thus, the Citadel Entities utterly refuse to "search for, review, or produce documents" that "describe[e] any trading strategy in any of the Terra-Native Tokens or the Terra Financial Instruments during the time period March 1, 2022 through May 31, 2022."   Moreover, counsel for the Citadel Entities have implicitly acknowledged that one or more such documents do exist as to Citadel Securities.  (*See* Rodriguez Dec., Exs. H - K.)

These trading strategy documents are essential to Movant's defense in the Underlying Action.  Because Movant has reached an impasse with Citadel Securities, it is compelled now to seek the Court's intervention.

## **ARGUMENT**

I.    **The Court Should Compel Citadel Securities to Produce the Limited and Relevant Documentation Sought by Movant**

A.    **Applicable Law**

The scope of all discovery, including discovery by subpoena, is governed by Federal Rule of Civil Procedure 26.  That Rule permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to an party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).   Within that scope, Federal Rule of Civil Procedure 45 requires subpoenaed parties to "produce designated documents, electronically stored information, or

tangible things in that person's possession, custody, or control."  Fed. R. Civ. P. 45(a)(1)(iii).

The threshold for obtaining non-party discovery is not especially high: "The scope of discovery under a Rule 45 subpoena is the same as the scope of discovery under Rule 26." *Woods v. On Baldwin Pond, LLC*, No. 613CV726ORL19DAB, 2014 WL 12625078, at *1 (M.D. Fla. Apr. 2, 2014).  It is a broad standard that "has been construed liberally by courts 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Landstar Glob. Logistics, Inc. v. Haskins*, No. 3:09-CV-1163-J-32JRK, 2011 WL 13176155, at *1 (M.D. Fla. Jan. 25, 2011) (quoting *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978)).  Accordingly, "[a] Rule 45 subpoena 'should be enforced unless it is clear that the evidence sought can have no possible bearing on the issues.'" *State Farm Mutual Auto. Ins. Co. v. Maistrenko* , No. 19-CV-20850-mc-Scola, 2020 WL 486271, at *3 (S.D. Fla., Jan. 30, 2020) (quoting *Benavides v. Velocity IQ, Inc.,* No. 05-cv-1536-T-30, 2006 WL 680656, at *2 (M.D. Fla. Mar. 15, 2006)).

And while courts resolving objections do take into consideration whether documents sought may constitute confidential information, there is "'no absolute privilege for trade secrets and similar confidential information.'" *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, slip op., Case No. 16-62492-mc-Zloch (S.D. Fl., May 15, 2017) (*citing Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979)).  Moreover, a party resisting disclosure must "first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." *Centurion Indus., Inc. v. Warren Steurer and Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981).   "If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action." *Id.*

However, even where a non-party establishes that information is sensitive, "courts

routinely direct that confidential trade secret information be produced subject to the terms of a confidentiality order." *Chembia Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.,* 236 F.R.D. 129, 136 (E.D.N.Y. 2006).   A protective order is the means by which concerns over disclosure of confidential material are addressed.  *E.g., Coty Inc. v. C Lenu Inc.,* 2010 WL 5392887, at *7 (S.D. Fl., Dec. 22, 2010) (compelling production of subpoena requests for information regarding suppliers and customers subject to protective order); *United States ex rel. Willis v. SouthernCare, Inc.,* 2015 WL 5604367, at *12 (S.D. Ga., Sept. 23, 2015).

### B.     The Limited Trading Data Sought from Citadel Securities Is Directly Relevant to the Underlying Action and Presents Little or No Burden to Citadel Securities

The limited trading strategy information sought bears directly on Movant's defense to the SEC's claims in the Underlying Action.  As noted, the SEC alleges that the May 2022 Depeg proves its case that Movant made misrepresentations about the stability of UST, and about the fact that algorithm was able to automatically restore and maintain the price peg for UST.

As also noted, a key part of Movant's defense to this claim is that the May 2022 Depeg did not result from instability in the algorithm of the UST stablecoin.  Movant instead asserts the Depeg resulted from a concerted effort by third parties active in the markets to "short" and depeg UST from its price.  Movant therefore seeks to determine which entities or actors engaged in market activity indicative of intentional shorting of UST, in order to buttress its defense.  *See* Ans. ¶ 170 (stating that "the cause of the depeg appears to have been concerted action by certain market participants to depress the price of UST").  The requested trading strategy information is directly relevant to why the May 2022 Depeg occurred, whether Citadel Securities participated in it, and whether Citadel Securities coordinated with others in these efforts to short UST.  In short, the trading strategy information sought from Citadel Securities is highly relevant to Movant's defense.

Further, the apparent burden on Citadel Securities to produce this information is, at most,

trivial.  First, Citadel Securities' assertion that the request is burdensome cannot be credited, because it has explicitly "refused" even to search for any responsive documents.  On what basis can Citadel Securities now argue it is burdensome?  This objection should be quickly overruled.

Moreover, according to the lone document produced, Citadel Securities ███████████ ████████████████████████████████████████  This suggests that documents concerning the underlying trading strategy(ies) ████████████  will be easily identified, minimizing any purported burden on Citadel Securities.  And, as noted above, there is a protective order in place to protect the confidentiality of any sensitive information – an order Citadel Securities has already taken advantage of in this matter in producing a lone document.

For these reasons, the Court should grant Movant's motion to compel Citadel Securities to produce "all documents describing any trading strategy in any of the Terra-Native Tokens or the Terra Financial Instruments during the time period March 1, 2022 through May 31, 2022."

## II.    In the Alternative, the Court Should Transfer this Motion to the Southern District of New York for Decision

Alternatively, the Court should transfer this Motion to the U.S. District Court for the Southern District of New York, where the Underlying Action is pending and from which the Subpoenas were issued.  Rule 45 permits a court to transfer a motion to compel, even over objection of the non-party withholding documents, where "exceptional circumstances" exist.  Fed. R. Civ. P. 45(f).

While Rule 45(f) does not enumerate the circumstances that may qualify as "exceptional," the Committee Notes to Rule 45 state transfer may be warranted "in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45(f), advisory committee's note to 2013 Amendment.  Accordingly, when

determining whether "exceptional circumstances" exist, "[a] district court 'should look to a variety of factors to determine if the judge from the issuing court is in a better position to rule on the motion due to her familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *Honeywell Int'l Inc. v. Narco Asbestos Pers. Inj. Settlement Tr.*, No. 8:21-MC-157-CEH-AAS, 2021 WL 6118078, at *1 (M.D. Fla. Dec. 27, 2021) (quoting *The Dispatch Printing Co. v. Zuckerman,* No. 16-CV-800-37-BLOOMVALLE, 2016 WL 335753, at *2 (S.D. Fla. Jan. 27, 2016)). "These factors include the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by the issuing court in the underlying litigation." *Id.*

As discussed above, the underlying litigation is a complex and novel cryptocurrency case. Not only will the accelerated discovery schedule in the Underlying Action likely create challenges for resolving the present dispute over the Citadel Subpoenas, Movant has issued similar subpoenas to various cryptocurrency exchanges for similar trading data, and thus related issues may arise in various districts where compliance is being sought. Transfer of this matter will permit Judge Rakoff to consider these related issues and address them in a manner consistent with overall management of the case. *See Honeywell*, 2021 WL 6118078 at *2 (finding exceptional circumstances exist in light of complexity of matter, expedited discovery schedule, and "risk of conflicting rulings" in motion to compel compliance with subpoena to second firm).

Further, the burden on Citadel Securities from transfer of this single motion to the Southern District of New York is minimal. Both Citadel Entities are enormous players in the financial markets, including in New York.[18] Moreover, while both Citadel Entities have defended lawsuits

---

[18]    Citadel Securities is a dominant market maker that "has been at the heart of a revolution in the way financial markets function, spreading from derivatives to stocks and currencies and into fixed income, such as US government debt. "Citadel Securities: how the Wall Street outsider became 'the Amazon of financial markets,'" https://www.ft.com/content/d4202685-9ef4-484f-a3f3-a7c731418935. Citadel Enterprise is the highest-earning

in the Southern District of New York, Citadel Securities is involved in active litigation in that district and is due to appear in court next month.[19]    Accordingly, in the alternative, the Court should transfer this matter to Judge Rakoff for consideration and decision.

## CONCLUSION

For the foregoing reasons, movant Terraform Labs Pte. Ltd. respectfully requests that the Court grant its motion to compel production of certain documents; or, in the alternative, transfer this matter to the U.S. District Court for the Southern District of New York for decision by Judge Rakoff.

## LOCAL RULE 7.1 CERTIFICATE CONFERRAL

The undersigned hereby certify that they have conferred with counsel for Citadel Securities in an attempt to resolve the matters raised in this motion.

---

hedge fund in the world.  "Citadel's $16 Billion Gain in 2022 Makes Ken Griffin's Flagship The Top Earning Hedge Fund Ever," https://www.forbes.com/sites/hanktucker/2023/01/22/citadels-16-billion-gain-in-2022-makes-ken-griffins-firm-the-top-earning-hedge-fund-ever/?sh=45a51d3d3105.  Both Citadel Entities have significant ties to New York.  Citadel Securities is registered in the State of New York as a broker-dealer.  FINRA BrokerCheck Report for Citadel Securities LLC, https://files.brokercheck.finra.org/firm/firm_116797.pdf.  In addition to providing operational and administrative services to Citadel Securities, *see id.* at 14, Citadel Enterprise also maintains an office in New York, from which it not only conducts its day-to-day business, but leads a training program for prospective new associates.  https://www.citadel.com/careers/investing/citadel-associate-program/.

[19]    Citadel Securities is scheduled to appear in the Southern District of New York on November 14, 2023, for oral argument on the motion to dismiss that Citadel Securities filed in *Northwest Biotherapeutics, Inc v. Canaccord Genuity LLC*, No. 1:22-cv-10185.  *See also In re: United States Oil Fund, LP Securities Litigation*, No. 1:20-cv-04740 (S.D.N.Y.) (Citadel Securities as defendant); *City of Providence, Rhode Island v. Bats Global Markets, Inc.*, No. 1:14-cv-02811 (Citadel Enterprise (under former name Citadel LLC) as defendant).

Dated: October 10, 2023
Miami, Florida

**HEISE SUAREZ MELVILLE, P.A.**
2990 Ponce De Leon Boulevard
Suite 300
Coral Gables, Florida 33134
Telephone (305) 800-4476

By: /s/ Luis E. Suarez
    Luis E. Suarez
    Florida Bar No. 390021
    lsuarez@hsmpa.com

**ELLIOTT KWOK LEVINE & JAROSLAW LLP**

By: /s/ *Matthew L. Levine*
    Matthew L. Levine (*pro hac vice* in process)
    Rachel J. Rodriguez (*pro hac vice* in process)
    565 Fifth Avenue, 7th Floor
    New York, NY 10017
    (212) 321-0510
    mlevine@ekljlaw.com

*Attorneys for Movant Terraform Labs Pte. Ltd.*